# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL INGRAM,<br><br>               Petitioner,<br>vs.<br><br>UNITED STATES OF AMERCIA,<br><br>               Respondent. | No. C 14-4071-MWB<br><br>**OPINION AND ORDER REGARDING PETITIONER'S AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

_____

## TABLE OF CONTENTS

I.    *INTRODUCTION*..................................................................................... *2*

II.   *LEGAL ANALYSIS* ................................................................................. *3*
      A.   *Procedural Default* ......................................................................... *3*
      B.   *The Eighth Amendment Claim*........................................................ *5*
      C.   *The Equal Protection/Selective Prosecution Claim* ......................... *6*
            1.   *Preliminary matters* ............................................................ *6*
            2.   *Elements of the claim* ......................................................... *9*
                 a.   *Discriminatory effect/similarly situated*................... *10*
                 b.   *Lack of a rational basis*......................................... *17*
      D.   *Certificate Of Appealability*........................................................ *18*

III.  *CONCLUSION* ..................................................................................... *19*

## I. INTRODUCTION

On March 17, 2016, with the assistance of counsel, petitioner Michael Ingram filed his Amended Motion Pursuant To 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (§ 2255 Motion), seeking relief from his mandatory minimum sentence on his 2008 conviction for conspiracy to distribute and to possess with intent to distribute crack cocaine. Ingram's mandatory minimum sentence was doubled from 10 years to 20 years, pursuant to 21 U.S.C. § 851, based on a prior felony drug conviction. Ingram's Amended § 2255 Motion seeks relief on two of his original claims: (1) a claim that the imposition of a § 851 enhancement in his case violated his Eighth Amendment rights; and (2) a claim that the imposition of a § 851 enhancement in his case violated his Fifth Amendment rights to Equal Protection and Due Process (his equal protection/selective prosecution claim).[1] Both claims are based on the geographical disparity in the application of § 851 enhancements between this and other districts.

On February 8, 2017, after reviewing the parties' briefs, I entered an Order for further briefing on specific issues. The parties filed their Supplemental Briefs on March 17, 2017, and Supplemental Replies on March 31, 2017. In addition, on March 17, 2017, Ingram filed a Motion To Expand The Record Pursuant To Rule 7 Of The Rules Governing Section 2254 Cases, to which the respondent consented, and on March 18, 2017, Ingram filed an Amended Motion To Expand The Record, involving one additional exhibit, to which the respondent also consented. Ingram's Motions To Expand The Record identify Rule 7 of the Rules Governing Section 2254 Cases as the authority on

---

[1] I will refer to Ingram's second claim as "equal protection/selective prosecution," recognizing that "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

which they are based. That rule, while inapplicable to this § 2255 case, is identical to Rule 7 of the Rules Governing Section 2255 Cases. Because I find good cause supports Ingram's Motions To Expand The Record, and the respondent has consented, those motions are **granted**.

After reviewing the parties' first round of supplemental briefs, I entered an Order on May 26, 2017, requiring the parties to make a proffer of evidence on Ingram's "equal protection/selective prosecution" claim and requiring supplemental briefing of the question of whether there is a rational basis for the geographic disparity between the imposition of a § 851 enhancement on Ingram in this district and lack of such an enhancement for similarly-situated persons in other districts. The parties filed their Proffers Of Evidence on August 10 and 11, 2017, and their Second Supplemental Briefs on September 15, 2017. Ingram filed a Second Supplemental Reply on September 29, 2017.

I conclude that Ingram's § 2255 Motion is now ripe for disposition.

## II. LEGAL ANALYSIS
### A. Procedural Default

Before considering any other questions in this case, I find it appropriate to address the respondent's contention, in its original briefing, that Ingram's claims are procedurally defaulted. The respondent is correct that, where a claim was not raised on direct appeal, it generally may not be raised in a § 2255 motion. *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014). A petitioner may overcome "procedural default" from failure to raise a claim on direct appeal, however, if the petitioner establishes both "'cause for the procedural default and actual prejudice resulting from the error.'" *Id*. (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996), in turn citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). The Supreme Court has recognized that a

3

showing that the factual or legal basis for a claim was not reasonably available to counsel (or the defendant) would constitute cause under this standard. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 284 (1999); *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *and compare Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (where the factual basis for a claim was available to counsel, but counsel failed to recognize it, there is no adequate "cause" for the default).

Although I made an anecdotal observation at Ingram's sentencing that there appeared to be unfair geographic disparities in the application of § 851 enhancements, contrary to the respondent's present contentions, that is a long way from an adequate factual basis for Ingram's § 2255 claims. Indeed, the only body that had the pertinent information, the United States Sentencing Commission, did not publish the relevant statistics that could establish an adequate factual basis for such a claim until 2011. *See Strickler*, 527 U.S. at 284 (noting that a cause external to the defense, such as the information being solely in the hands of the government, was required). It was not until I published my analysis of the disparity, specifically comparing the Northern District of Iowa to other districts, in *United States v. Young*, 960 F. Supp. 2d 881 (N.D. Iowa 2013), that an adequate basis for Ingram's claim became apparent. Thus, I find that Ingram has shown cause for his failure to raise on his direct appeal the geographic disparity in application of § 851 enhancements, because the factual basis for such a claim was not reasonably available to him or his counsel before Ingram's appeal. *Strickler*, 527 U.S. at 284.

The prejudice prong requires a showing that there is a reasonable probability that, but for the cause in question, the result of the proceeding would have been different. *See Kennedy v. Kemna*, 666 F.3d 472, 477 (8th Cir. 2012). Removing improper selective application of the § 851 enhancement in Ingram's case would have resulted in a halving of his mandatory minimum sentence and a significant reduction of his sentence to one

within his advisory Sentencing Guidelines range. I find that difference sufficient "prejudice" to overcome procedural default.

Thus, procedural default does not bar relief on Ingram's claims.

### B. The Eighth Amendment Claim

Ingram's first claim is that imposition of a § 851 enhancement in his case, on the basis of geographical location, violates the Eighth Amendment. Ingram relies on Justice Douglas's statement in his concurrence in *Furman v. Georgia*, 408 U.S. at 238, 256 (1972), that a "capriciously selected random handful upon whom the sentence of death is imposed is unconstitutional cruel and unusual punishment under the Eighth Amendment requiring penal laws to be evenhanded, non-selective, and non-arbitrary." The respondent argues that a § 851 enhancement, even one doubling the mandatory minimum sentence from ten years to twenty years, is not closely comparable to a death penalty. Indeed, the respondent argues that the Eighth Amendment forbids only "grossly disproportionate" sentences, but the Eighth Circuit Court of Appeals has concluded that mandatory minimum penalties do not violate the Eighth Amendment. The respondent also argues that Ingram's § 851 enhanced mandatory minimum sentence of twenty years is not grossly disproportionate to his advisory Sentencing Guidelines range of 168 to 210 months, nor does it exceed the sentence permitted by statute.

As the Eighth Circuit Court of Appeals has explained,

> "'[A] sentence within statutory limits is generally not subject to review under the Eighth Amendment.'" *United States v. Rodriguez–Ramos*, 663 F.3d 356, 366 (8th Cir.2011) (quoting *United States v. Murphy*, 899 F.2d 714, 719 (8th Cir.1990)); *see also United States v. Collins*, 340 F.3d 672, 679 (8th Cir.2003) ("It is well settled that a sentence within the range provided by statute is generally not reviewable by an appellate court." (citation omitted)). In fact, we have

5

> "never held a sentence within the statutory range to violate
> the Eighth Amendment." *United States v. Vanhorn*, 740 F.3d
> 1166, 1170 (8th Cir.2014) (citing *United States v. Neadeau*,
> 639 F.3d 453, 456 (8th Cir.2011)).

*United States v. Contreras*, 816 F.3d 502, 514 (8th Cir. 2016). Not only was Ingram's sentence within the statutory range, the statutorily-mandated sentence imposed on Ingram is not comparable to the "extreme case[s]" involving "grossly disproportionate penalties for the underlying crime." *See, e.g., United States v. Meeks*, 756 F.3d 1115, 1120-21 (8th Cir. 2014) (citing cases rejecting Eighth Amendment challenges to sentences, including drug cases).

Even accepting Ingram's allegations as true, he is not entitled to relief on his Eighth Amendment claim, and denial of this claim without a hearing is appropriate. *United States v. Sellner*, 773 F.3d 927, 929-30 (8th Cir. 2014) ("Evidentiary hearings on 28 U.S.C. § 2255 motions [are only] necessary prior to the motion's disposition if a factual dispute exists."). This claim is denied.

### C. *The Equal Protection/Selective Prosecution Claim*

#### 1. *Preliminary matters*

In the first round of supplemental briefing, Ingram contended, and the respondent conceded, that a prosecutor, a specific United States Attorney's Office (USAO), or the Department of Justice (DOJ) can be a proper respondent on an equal protection/selective prosecution claim. Thus, I may pass on to some contested preliminary issues.

Specifically, the parties dispute whether geographic location is a difference on which an equal protection/selective prosecution claim can be based. The respondent argues that geographic location is not a proper basis for such a claim, because it is not an impermissible motive such as race, religion, or the exercise of constitutional rights. I

conclude that the respondent has mistaken *illustrations* of violations of equal protection for the *standard* for violations of equal protection. The *standard* is stated, variously, as whether the decision was based on an "unjustifiable standard," "arbitrary classification," or "impermissible motive," followed by illustrations—usually prefaced by "such as," indicating the list is not exclusive—including "race," "religion," or "exercise of constitutional rights." *See, e.g.*, *Texas v. Lesage*, 526 U.S. 18, 21 (1999) (explaining that a school could defeat an equal protection claim based on racially-based admissions "by proving that it would have made the same decision without the impermissible motive"); *United States v. Armstrong*, 517 U.S. 456 (1996) (explaining equal protection requires that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification'" (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)); *Wayte v. United States*, 470 U.S. 598, 608 (1985) ("In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," which the court held included the exercise of protected statutory and constitutional rights (internal quotation marks and citations omitted)); *United States v. Jeanpierre*, 636 F.3d 416, 424-25 (8th Cir. 2011) (recognizing that a prosecutor's discretion in imposing § 851 enhancements is subject to "constitutional constraints," including that the decision "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification" (internal quotation marks and citations omitted)); *United States v. Leathers*, 354 F.3d 955, 962 (8th Cir. 2004) (stating that an equal protection claim requires proof, inter alia, "that the government's action in thus singling [the defendant] out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights" (quoting *United States v. Parham*, 16 F.3d 844, 846 (8th Cir. 1994)).

Thus, the question is whether "geographic location" is or can be an "unjustifiable standard" or an "impermissible motive," because, for example, it is an "arbitrary

classification." *See generally Village of Willowbrook v. Ollech*, 528 U.S. 562 (2000) (holding that claimants need not allege that they were part of a suspect class to state an equal protection claim). I conclude that it can be. *See United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2002) ("[I]t is difficult to imagine a sentencing disparity less warranted than one which depends on the accident of the judicial district in which the defendant happens to be arrested" (citations omitted)), *abrogated on other grounds by United States v. Jiminez-Perez*, 659 F.3d 704 (8th Cir. 2011).

The respondent is not entirely wrong, however, that there is a difference between an equal protection/selective prosecution claim based on an arbitrary classification like race or religion, on the one hand, and such a claim based on an arbitrary classification like geographic location, on the other. The Eighth Circuit Court of Appeals has explained, "When no fundamental right or suspect class is at issue, a challenged law [or action] must pass the rational basis test." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 967, 886 (8th Cir. 2016) (citing *Reno v. Flores*, 507 U.S. 292, 301 (1993)); *see also Hassan v. City of New York*, 804 F.3d 277, 298-99 (3d Cir. 2015) (explaining, in a § 1983 case alleging selective enforcement based on "religious affiliation," that "at a minimum," equal protection requires "rational-basis review," "intermediate scrutiny" where a "quasi-suspect" class, like gender, is at issue, and "strict scrutiny" only where a suspect class, like race and nationality, is at issue); *United States v. Hughes*, 632 F.3d 956, 960 (6th Cir. 2011) (case involving an equal protection/selective prosecution challenge to prosecution under 18 U.S.C. § 2423(b), recognizing that, because the petitioner was not part of a suspect class, he had to show that the government's classification lacked a rational basis); *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1337 (11th Cir. 2002) (case involving equal protection challenge to selective prohibition of the purchase of alcohol by persons under a certain age, explaining that age is not a "suspect class," so that the prohibition would be scrutinized only under the

8

"rational basis" test). "Geographic location" plainly is not a "suspect" or "quasi-suspect" class, so that Ingram's equal protection/selective prosecution claim is only subject to "rational basis" review.

### 2. *Elements of the claim*

As the Supreme Court has explained, "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608). Thus, in the case of a suspect classification, such as race, requiring strict scrutiny, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. (quoting *Wayte*, 470 U.S. at 608); *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) ("To succeed, [a claimant] 'must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose.'" (quoting *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996)). More specifically, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id*. (adding, "This requirement has been established in our case law since *Ah Sin v. Wittman*, 198 U.S. 500, 25 S. Ct. 756, 49 L.Ed. 1142 (1905)."). Consequently, the Eighth Circuit Court of Appeals has stated, where the claim is based on a suspect classification, "[a] selective prosecution claim requires a defendant to show that: '(1) people similarly situated to [him] were not prosecuted; and (2) the decision to prosecute was motivated by a discriminatory purpose.'" *United States v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011) (quoting *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004)).

As noted above, however, geographic location is not a suspect classification; thus, an equal protection claim based on geographic location is subject only to rational basis scrutiny. "Under rational basis [scrutiny], the [claimants] 'must prove [that they] w[ere]

9

treated differently by the [respondent] than similarly situated persons and the different treatment was not rationally related to a legitimate government objective.'" *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 972 (8th Cir. 2015) (quoting *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006), and explaining that, where the claimants had failed to establish that strict scrutiny applied, their equal protection claim was subject only to rational basis scrutiny); *accord Hassan*, 804 F.3d at 298-99 (selective enforcement based on religious affiliation); *Hughes*, 632 F.3d at 960 (case involving an equal protection/selective prosecution challenge to prosecution under 18 U.S.C. § 2423(b), recognizing that, because the petitioner was not part of a suspect class, he had to show that the government's classification lacked a rational basis); *Gary*, 311 F.3d at 1337 (case involving equal protection challenge to selective prohibition of the purchase of alcohol by persons under a certain age, explaining that age is not a "suspect class," so that the prohibition would be scrutinized only under the "rational basis" test).

### a. *Discriminatory effect/similarly situated*

One of the questions on which I required supplemental briefing was, what degree of similarity between defendants with a qualifying prior conviction is necessary to establish that they are "similarly situated" for purposes of an equal protection/selective prosecution claim based on application of § 851 sentencing enhancements? In *United States v. Smith*, 231 F.3d 800 (11th Cir. 2000), cited by Ingram, the Eleventh Circuit Court of Appeals noted, "Neither this Court nor the Supreme Court has definitively explained what constitutes a 'similarly situated' individual in th[e] context [of selective prosecution]." *Smith*, 231 F.3d at 810. One of the frustrations that prompted me to ask the parties for supplemental briefing of this specific question is that the Supreme Court and the Eighth Circuit Court of Appeals still have not had the opportunity to provide such an explanation. For example, the formulation of the standard as "similarly situated 'in all relevant respects,'" *see Gilani*, 843 F.3d at 348 (quoting *Flowers v. City of*

*Minneapolis*, 558 F.3d at 794, 798 (9th Cir. 2009)), does not clarify at all what those "relevant respects" might be.

In *Smith*, the Eleventh Circuit Court of Appeals suggested the following answer:

> [T]he definition is informed by the Supreme Court's recognition of legitimate factors that may motivate a prosecutor's decision to bring a case against a particular defendant. Those factors include "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Armstrong*, 517 U.S. at 465, 116 S.Ct. at 1486.
>
> In light of those legitimate factors, we define a "similarly situated" person for selective prosecution purposes as one [1] who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan— and [2] against whom the evidence was as strong or stronger than that against the defendant.

*Smith*, 231 F.3d at 810 (numbers added).

I note that the Fourth Circuit Court of Appeals has identified similar factors. That court fleshed out a list of factors that would demonstrate that defendants are similarly situated because "their circumstances present non distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Venable*, 666 F.3d 893, 900-901 (4th Cir. 2012) (citing *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)). The court explained,

> Of particular significance here, the district court cannot only consider the other persons' "relative culpability," but must "take into account several factors that play important and

11

> legitimate roles in prosecutorial decisions." [*Olvis*, 97 F.3d at 744]. Examples of such factors include: (1) a prosecutor's decision to offer immunity to an equally culpable defendant because that defendant may choose to cooperate and expose more criminal activity; (2) the strength of the evidence against a particular defendant; (3) the defendant's role in the crime; (4) whether the defendant is being prosecuted by state authorities; (5) the defendant's candor and willingness to plead guilty; (6) the amount of resources required to convict a defendant; (7) the extent of prosecutorial resources; (8) the potential impact of a prosecution on related investigations and prosecutions; and (9) prosecutorial priorities for addressing specific types of illegal conduct. *Id*.

*Venable*, 666 F.3d at 901. The court cautioned, however, that analysis of the factors should not be conducted "in a mechanistic fashion." *Id*. Thus, I conclude that not every factor identified by the Fourth Circuit Court of Appeals is necessarily relevant to every kind of equal protection/selective prosecution claim.

I find that some of these factors are also consistent with explanations of "similarly-situated persons," for purposes of other kinds of equal protection claims, by the Eighth Circuit Court of Appeals and the Supreme Court. The Supreme Court and the Eighth Circuit Court of Appeals have explained that, for purposes of an equal protection claim based on *Batson v. Kentucky*, 476 U.S. 79 (1986), "[t]he characteristics of similarly situated jurors need not match perfectly with the excluded jurors, for 'potential jurors are not products of a set of cookie cutters.'" *United States v. Young*, 753 F.3d 757, 780 (8th Cir. 2014) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 247 n.6 (2005)). Neither are criminal defendants subject to § 851 enhancements "products of a set of cookie cutters." Yet, the claimant and the comparators must both be subject to a § 851 enhancement, or any comparison would be meaningless.

Going further, the Eighth Circuit Court of Appeals has repeatedly identified "similarly situated" persons as those engaged in "similar misconduct." *See, e.g., Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005). Other aspects of the "similar misconduct" requirement include that the comparator was subject to the "same standards" and engaged in "the same conduct without any mitigating or distinguishing circumstances." *See, e.g., Fatemi v. White*, 775 F.3d 1022, 1042 (8th Cir. 2015) (equal protection employment discrimination case); *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1231 (8th Cir. 2013) (equal protection employment discrimination case describing the required similarity as "comparable seriousness" of the misconduct, but expressly permitting consideration of comparators with more serious misconduct). As to differences in mitigating circumstances, in the case of criminal defendants, the Eighth Circuit Court of Appeals has explained that a defendant who pleaded guilty and cooperated with the government is not similarly situated to a defendant who did not. *See, e.g., United States v. Bowie*, 616 F.3d 802, 819 (8th Cir. 2010). These factors are consistent with the statement by the Eleventh Circuit Court of Appeals that a similarly-situated person is "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant." *Smith*, 231 F.3d at 810.

In this case, in my view, this "similar misconduct" requirement is of considerable importance. In cases involving equal protection claims based on charging of substantive offenses, this factor might well require closer similarity than the same general kind of offense, such as drug trafficking, and instead require that the offenses be charged under the same statute, such as drug conspiracy crimes pursuant to 21 U.S.C. § 846, and likely similar or close base offense levels of the same controlled substance. Where, as here, the charging decision at issue does not involve a substantive offense, but a penalty enhancement, however, I believe that a "relevant respect," *see Gilani*, 843 F.3d at 348,

13

is the potential penalty. Thus, here, a similarly-situated person would be someone charged with a drug-trafficking crime that subjected the comparator to the same mandatory minimum sentence pursuant to 21 U.S.C. § 841, in the absence of a § 851 enhancement, that Ingram faced. *Cf. Smith*, 231 F.3d at 810. I think another relevant component of the "similar misconduct" requirement is a similar criminal history, including, for example, whether a defendant was prosecuted in state or federal court, because recidivism, deterrence, and enforcement priorities are plainly relevant factors in the determination of charging decisions, as the Eleventh and Fourth Circuit Courts of Appeals recognized. *See Venable*, 666 F.3d at 901; *Smith*, 231 F.3d at 810. Indeed, the penalty enhancement under § 851 is directed at recidivism, because it is triggered by prior drug felonies.

I also conclude that, in the context of a § 851 enhancement, this "comparable seriousness" factor extends to the underlying drug offense on which the enhancement is predicated. To me, this is the most important factor. I often see state court aggravated misdemeanors that are very old used as the predicate prior drug felonies for § 851 enhancements. Often, the offender received probation for that predicate offense and never served even a few days of county jail time. If one defendant has an old state court misdemeanor conviction where he never served a day in jail, but another defendant had a prior federal drug conspiracy conviction with a lengthy prison sentence, this difference would be exceptionally important in determining whether or not they were "similarly situated." In other words, these are "legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to [different defendants]." *Venable*, 666 F.3d at 900-901. Thus, in the context of a § 851 enhancement, the nature and punishment of the predicate offense are crucial factors in the "similarly situated" analysis.

I believe that other "relevant respects" in this case are whether the comparators are alike in the disposition of their criminal cases, *e.g.*, by plea or trial, and whether the

comparators cooperated, because these are relevant "mitigation" factors in punishment, as well. *See Fatemi*, 775 F.3d at 1042 (noting the relevance of "mitigation"); *Bowie*, 616 F.3d at 819 (noting that defendants who pleaded guilty and cooperated are not similarly situated to defendants who did not).

In short, while I do not find it necessary to attempt a comprehensive list of pertinent factors, nor do I find it necessary to determine that certain factors are irrelevant, it seems to me that the following factors are the *minimum* points of similarity that must be shown to establish that a comparator is similarly situated to Ingram for purposes of a § 851 enhancement: (1) The comparator must have been potentially subject to a § 851 enhancement; (2) the comparator's predicate offense must have been similar in nature, seriousness, recentness or remoteness in time, and punishment; (3) the comparator's federal drug-trafficking crime must have carried the same mandatory minimum sentence pursuant to § 841, in the absence of a § 851 enhancement; and (4) the comparator must have gone to trial on the federal charge.

The comparators that Ingram has identified as "similarly situated" in his Proffer Of Evidence satisfy the first and third of the minimum points of similarity identified above, but none satisfy the fourth, and it is, at best, uncertain whether they satisfy the second. As the starting point for the necessary comparisons, Ingram went to trial on and was convicted by a jury of a charge of conspiracy to distribute and to possess with intent to distribute 50 grams or more of crack cocaine. His prior conviction for purposes of a § 851 enhancement, as identified in the Superseding Indictment and the Notice Of Intent To Seek Enhanced Penalties Pursuant To 21 U.S.C. § 851, was for manufacture/delivery of a controlled substance, on or about October 24, 2001, in Cook County Circuit Court, Illinois. Ingram's Presentence Investigation Report shows that he received 18 months of probation on this prior conviction.

Dewight Brewer, Ingram's first purportedly similarly-situated comparator, was convicted in 2011 in the Eastern District of Michigan of distribution of at least one kilogram of heroin and five kilograms of cocaine, on a guilty plea in exchange for the prosecution's recommendation of a sentence of 188 months and agreement not to file a § 851 enhancement. Ingram Proffer Of Evidence, Ex. 8, p.3, and Ex. 9, pp. 2-4. Thus, unlike Ingram, Brewer was convicted pursuant to a plea agreement, so he is distinguishable, not similarly situated. This is so, even though his prior convictions include one that might be considered more serious than Ingram's, because Brewer had a 2001 conviction for conspiracy to distribute crack and heroine, for which his prison term ended in 2008, a few years prior to his 2011 federal offense, Ingram Proffer Of Evidence, Ex. 9, pp. 2-3, where Ingram's prior conviction was several years earlier and incurred only probation.

Otis Booth, offered as another comparator, was convicted in 2014 in the Western District of Tennessee of trafficking between five and fifteen kilograms of cocaine, while he was on supervised release for another offense, but the prosecution agreed not to file the § 851 enhancement as part of his plea agreement. Ingram Proffer Of Evidence, Ex. 2, p. 2. Thus, Booth also pleaded guilty, where Ingram went to trial. Furthermore, Ingram's Proffer Of Evidence provides no indication of the nature, date, or punishment of Booth's predicate offense for § 851 purposes, so the extent of similarity on that point cannot be determined.

Stevon Ray Alexander pleaded guilty in 2009 in the Western District of Louisiana to possession with intent to distribute more than 50 grams of crack cocaine, and the prosecution filed no § 851 enhancement. Ingram Proffer Of Evidence, Ex. 1, p.2. Thus, also unlike Ingram, Alexander's federal charge was resolved by a plea, rather than a trial. Alexander's plea agreement gives no indication of the nature, recentness, or punishment of his predicate offense. *Id.* His brief on appeal indicates two prior convictions for

"drug possession" in 2001, and a third conviction for "drug possession" in March 2008, just prior to his conviction on his federal offense, but does not indicate the punishment of any of his prior convictions. Thus, Alexander appears to be distinguishable on the second minimum point of similarity, as well as the fourth.

In short, while the statistical comparison of various districts set out in *United States v. Young*, 960 F. Supp. 2d 881 (N.D. Iowa 2013), shows substantial disparities in the application of § 851 enhancements among federal districts, those statistics do not demonstrate the required different treatment of persons *similarly situated in relevant respects* to establish the "discriminatory effect" element of an equal protection/selective prosecution claim. Ingram has failed to identify any persons similarly situated in the *minmum* ways required for his equal protection/similarly situated challenge to his § 851 enhancement. Ingram's equal protection/selective prosecution claim fails on the "similarly situated" element.

### b. *Lack of a rational basis*

Even assuming that Ingram could marshal evidence of persons in other districts who were sufficiently similarly situated, but were not subjected to § 851 enhancements, to establish a discriminatory effect, he would still have to prove the lack of a rational basis for that different treatment. *Stevenson*, 800 F.3d at 972; *accord Hassan*, 804 F.3d at 298-99; *Hughes*, 632 F.3d at 960; *Gary*, 311 F.3d at 1337.

Ingram seems to suggest that evidence of dissimilar treatment of similarly-situated persons in different geographical locations also suffices to make the required showing of lack of a rational basis. Even if that were true, Ingram has failed to make the required showing of dissimilar treatment of similarly-situated persons in different geographical locations from which he contends lack of a rational basis could be inferred.

Ingram's principal difficulty with showing lack of a rational basis is that, while there is a "clear pattern" of disparate application of § 851 enhancements in various

districts, even though § 851 appears neutral on its face as to geographic locations, that disparity may be rationally related to legitimate government interests. As the respondent repeatedly asserts, the difference is readily explainable on the basis of, and rationally related to, the factors that prosecutors are allowed to consider in exercising their prosecutorial discretion about what charges (and enhancements) to bring. *Wayte*, 470 U.S. at 607 (reiterating that USAOs retain "broad discretion" as to whom to prosecute and what charges to bring). As the respondent argues, different federal districts have different needs, resources, personnel, and priorities, and they are entitled to pursue policies that reasonably address those differences. There is no doubt that the USAO for the Northern District of Iowa could produce a rational basis for imposing the § 851 enhancement on Ingram, because he has a prior drug conviction, and imposing such an enhancement serves the legitimate governmental purpose of punishing recidivism, which is clearly a policy of the USAO in this district, as the statistics discussed in *Young* quite clearly show.

Thus, Ingram also has not proffered any evidentiary basis on which he can demonstrate lack of a rational basis in support of his equal protection/selective prosecution claim, and that claim is denied as a matter of law.

### D. *Certificate Of Appealability*

Denial of all of Ingram's claims for § 2255 relief, including those abandoned in briefing, raises the question of whether or not he is entitled to a certificate of appealability on those claims. In order to obtain a certificate of appealability on those claims, Ingram must make a substantial showing of the denial of a constitutional right. *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir.

1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I conclude that Ingram has failed to make a substantial showing that denial of his Eighth Amendment claim is debatable among reasonable jurists, that a court could resolve any of the issues raised in that claim differently, or that any question raised in that claim deserves further proceedings. Consequently, a certificate of appealability is denied as to Ingram's Eighth Amendment claim. *See* 28 U.S.C. § 2253(c)(1)(B); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569. On the other hand, because Ingram's equal protection/selective prosecution claim involves several unsettled questions of law and my resolution of those issues and attendant factual issues could be debatable among reasonable jurists, and other courts could resolve some or all of those issues differently, or conclude that the claim deserves further proceedings, I will grant a certificate of appealability as to Ingram's equal protection/selective prosecution claim. *Id*.

### III.   CONCLUSION

Upon the foregoing,

1. Petitioner Michael Ingram's March 17, 2017, Motion To Expand The Record Pursuant To Rule 7 Of The Rules Governing Section 2254 Cases (docket no. 25)

and his March 18, 2017, Amended Motion To Expand The Record (docket no. 28), to which the respondent has consented, are **granted**;

2. Petitioner Michael Ingram's August 27, 2014, *Pro* Se Motion Pursuant To 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (docket no. 1), as amended, with the aid of counsel, by his March 17, 2016, Amended Motion Pursuant To 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence (docket no. 10), is **denied in its entirety**;

3. No certificate of appealability will issue as to Ingram's Eighth Amendment claim or any contention in that claim;

4. A certificate of appealability shall issue as to Ingram's equal protection/selective prosecution claim and the contentions in that claim.

**IT IS SO ORDERED**.

**DATED** this 31st day of October, 2017.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA